IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| GENARO DIAZ,<br><br>    *Plaintiff*,<br><br>  v.<br><br>GREAT DANE, LLC,<br><br>    *Defendant*. | NO. 3:24-CV-50033<br><br>HONORABLE IAIN D. JOHNSTON |

## MEMORANDUM OPINION AND ORDER

Plaintiff Genaro Diaz brings this action under the Americans with Disabilities Act (ADA) and the Illinois Worker's Compensation Act against his former employer, Defendant Great Dane, LLC ("Great Dane"). Great Dane moves to dismiss Count I of Mr. Diaz's complaint, which is a disability discrimination claim under the ADA. For the following reasons, the motion is denied.

## BACKGROUND

Mr. Diaz was a welder employed by Great Dane from October 2018 to March 2022. Dkt. 1 ¶ 11. On February 7, 2022, he fell from the top of a container while holding a hose; the fall seriously injured his right arm and shoulder. *Id.* ¶ 14. He immediately reported the injury to his supervisors and then went to the hospital. *Id.* ¶ 15. At the hospital, after being treated, the physician provided a note instructing him not to use his right arm for two weeks. *Id.* ¶ 16.

The next day, Mr. Diaz gave the note to his supervisor, who then assigned Mr. Diaz to work that required lifting heavy objects. *Id.* ¶ 17. This caused him pain, so he

1

again saw a physician, who provided another note. *Id.* ¶¶ 18-19. This second note limited Mr. Diaz to "light duty" work and extended the restriction on using his right arm for another two weeks. *Id.* ¶ 19. Mr. Diaz gave the note to his supervisor on February 15, but his supervisor insisted that Mr. Diaz continue with the same work. *Id.* ¶¶ 20-21. Both his supervisor and another supervisor mocked Mr. Diaz, pointing to his arms and miming crying; the other supervisor told Mr. Diaz that he was a "fucking girl," a "crybaby," and useless at work. *Id.* ¶ 23. Nearly two weeks later, on February 28, Mr. Diaz saw his physician again; the physician gave him a note with updated instructions that he should continue on "light duty" and not lift more than five pounds with his right arm. *Id.* ¶ 24. When he gave the note to his supervisor the next day, his supervisor became upset and threw the note back at him. *Id.* ¶ 25. The other supervisor called him a "fucking pussy." *Id.* ¶ 26.

A day later, on March 2, Mr. Diaz was asked to climb onto a trailer holding a hose the same way he did when he fell. *Id.* ¶ 27. Then, on March 3, Mr. Diaz's supervisor accused him of getting fraudulent doctor notes and gave him a written warning for violating his doctor's restrictions when climbing on the trailer the day before. *Id.* ¶¶ 28-29. He was told he needed to sign the written warning if he didn't want to "have problems." *Id.* ¶ 30. Mr. Diaz, as a result of these events, contacted an attorney; the attorney sent a letter to Great Dane asking for it to honor Mr. Diaz's restrictions and requests for accommodation. *Id.* ¶ 32. Great Dane received the letter on March 9, the same day that Mr. Diaz resumed his regular welding duties. *Id.* ¶¶ 33-34.

On that day, a coworker asked Mr. Diaz to help him push a trailer. *Id.* ¶ 35. Mr. Diaz said he couldn't because of his shoulder pain. *Id.* ¶ 37. The supervisors yelled at him and ordered him to help with the trailer; one of them told Mr. Diaz that if he refused, he would be terminated. *Id.* ¶¶ 38-39. Mr. Diaz asked for a union representative, but his supervisor yelled at the union representative to go back to work, so she left without helping Mr. Diaz. *Id.* ¶ 40. Shortly after, a manager told Mr. Diaz that he could leave work for the day and assured him not to worry about being terminated if he left. *Id.* ¶ 43. Mr. Diaz left and went to the hospital, where he got another note. *Id.* ¶¶ 44-45.

On March 10, Mr. Diaz presented the note to the manager who had let him leave the day before. *Id.* ¶ 45. Mr. Diaz's supervisor then called him in and told him he was fired for refusing to push the trailer. *Id.* ¶ 46. The supervisor presented Mr. Diaz with a written disciplinary notice for the trailer incident, but Mr. Diaz didn't sign it because he couldn't read English and didn't understand the document. *Id.* ¶¶ 46-47. Mr. Diaz was terminated later that day. *Id.* ¶ 49.

## LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court may consider documents other than the complaint "when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th

3

1178, 1181 n.1 (7th Cir. 2021). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

To establish a claim under Title I of the ADA, Mr. Diaz must allege facts showing that (1) he has a disability, (2) "he is qualified to perform the essential functions of the job either with or without reasonable accommodation," and (3) "he suffered an adverse employment action because of his disability." *Gogos v. AMS Mech. Sys.*, 737 F.3d 1170, 1172 (7th Cir. 2013). Great Dane challenges only the first element—that Mr. Diaz had a disability.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include performing manual tasks and lifting. *Id.* § 12102(2)(A). An impairment or a record of an impairment counts as a disability even if it is "transitory and minor." *Gogos*, 737 F.3d at 1172; *see also* 29 C.F.R. § 1630.2(j)(1)(ix). Determining whether someone has a disability under the ADA requires an individualized assessment of the person's situation. *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 643 (7th Cir. 2010); *see also* 29 C.F.R. § 1630.2(j)(1)(iv). And the ADA instructs that "disability" should be construed broadly—"to the maximum extent permitted" by its terms. 42 U.S.C. § 12102(4)(A). Erring on the side of broad construction, the Court finds it plausible that Mr. Diaz's shoulder injury qualifies as a disability under the ADA. The work restrictions on lifting, imposed by a physician,

4

allow for the reasonable inference that the shoulder injury left him unable to lift things, a major life activity. *See Mata v. Deslauriers, Inc.*, No. 21 CV 3976, 2023 U.S. Dist. LEXIS 52700, at *8-9 (N.D. Ill. Mar. 28, 2023); *Gray v. Fleetpride, Inc.*, No. 21 C 4981, 2022 U.S. Dist. LEXIS 188991, at *6-7 (N.D. Ill. Oct. 17, 2022).

Great Dane argues that Mr. Diaz's shoulder injury isn't a disability because it didn't "substantially" limit him—emphasizing the temporary nature of Mr. Diaz's injury. Great Dane doesn't deny that *some* temporary injuries may qualify as disabilities, but it contends that Mr. Diaz's doesn't. And to its credit, not all temporary injuries have been deemed disabilities by courts. *Compare Mata*, 2023 U.S. Dist. LEXIS 52700, at *11-12 (collecting cases where courts deemed temporary injuries to be disabilities), *with Shaw v. Williams*, No. 16-cv-1065, 2018 U.S. Dist. LEXIS 132125, at *24 (N.D. Ill. Aug. 7, 2018) (collecting cases where "run-of-the-mill short-term injuries" didn't qualify as disabilities).

But Great Dane's analysis is flawed. It draws from *Shaw v. Williams*, a nonbinding district court decision, for a legal rule that short-term impairments must be "sufficiently severe"—for example, resulting in long-term or permanent impact—to be covered by the ADA. *Shaw*, 2018 U.S. Dist. LEXIS 132125, at *23. The Court disagrees with Great Dane that such a "test" is appropriate here. *Shaw*'s language mirrors the language from *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, in which the Supreme Court held that "an individual must have an impairment that prevents or severely restricts the individual" and that "[t]he impairment's impact must also be permanent or long-term." 534 U.S. 184, 198 (2002). But that was the

5

very same language Congress abrogated by amending the ADA. *Edwards v. Dart*, No. 21 C 5665, 2022 U.S. Dist. LEXIS 148054, at *8 (N.D. Ill. Aug. 17, 2022) ("Congress abrogated *Toyota* in the ADA Amendments Act of 2008 ("ADAAA"), finding that the Court had 'created an inappropriately high level of limitation necessary to obtain coverage under the ADA.'" (citations omitted)).[1]

Great Dane also largely relies on cases that predate the 2008 amendment to the ADA. Before that amendment, "intermittent, episodic impairments were not disabilities, the standard example being a broken leg." *Mata*, 2023 U.S. Dist. LEXIS 52700, at *10 (cleaned up) (quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995)). The amendment, however, broadened the definition of "disability"; today, "transitory and minor" impairments can be substantially limiting. *Gogos*, 737 F.3d at 1172; *Modjeska v. UPS*, 42 F. Supp. 3d 1046, 1060 (E.D. Wis. 2014); *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 880 (N.D. Ill. 2014) ("Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive."). The pre-2008 examples provided by Great Dane, including the 2007 EEOC guidance,[2] are unhelpful to this case.

---

[1] *Shaw* was also a summary judgment decision, so it is unhelpful at this stage for deciding the sufficiency of the facts. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). The Court has a standing order that warns counsel not to rely on summary judgment motions in support of motions to dismiss, and Great Dane's counsel even acknowledges as much. Dkt. 10 at 7 n.2. But even if the Court were to apply *Shaw*'s statement of the law under a Rule 12(b)(6) standard, the complaint has sufficiently alleged that Mr. Diaz had a disability. Based on the fact that Mr. Diaz returned to the hospital on March 9 after having been cleared to work normally, it's plausible, drawing reasonable inferences in his favor, that there was a long-term impact to Mr. Diaz's ability to lift objects.

[2] At the top of the 2007 EEOC guidance that Great Dane cites in its reply, there's a note titled "Notice Concerning The Americans With Disabilities Act Amendments Act Of 2008"— Great Dane incorrectly takes that to be the title of the guidance. In fact, the note warns that

6

**CONCLUSION**

The complaint sufficiently alleges that Mr. Diaz had a disability within the meaning of the ADA, and that is enough to survive Great Dane's challenge to Count I. Great Dane's motion to dismiss is denied.

Date: May 16, 2024

HONORABLE IAIN D. JOHNSTON
*United States District Judge*

---

this guidance predates the 2008 amendment: "This document was issued prior to enactment of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), which took effect on January 1, 2009. The ADAAA broadened the statutory definition of disability, as summarized in this list of specific changes." U.S. Equal Emp. Opportunity Comm'n, EEOC-NVTA-2007-1, *Health Care Workers and the Americans with Disabilities Act* (2007). In addition, it's not clear how much weight should be given to EEOC guidance. *See id.* ("The contents of this document do not have the force and effect of law."); *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 781 n.2.